IDA A. PETERSON

*v.*

CYRUS D. REID and FRANK T. MORRILL & COMPANY.

[Decided November 8th, 1909.]

1. In a suit to foreclose a purchase-money mortgage, a cross-bill, praying not only for an abatement of the mortgage debt, but for the surrender of the mortgage for cancellation, on its being found that the debt had been discharged, will be considered on demurrer as presenting equitable claims properly presented by answer by way of cross-bill, though an abatement of the mortgage debt may be gained by answer.

2. A cross-bill, in a suit to foreclose a purchase-money mortgage, which alleges that the assignee of the mortgagee bringing the suit has no interest in the litigation, but is prosecuting it for the mortgagor, and which demands damages for the breach of the mortgagee's covenant to fill in the land sold by him to the mortgagor, is not demurrable for failing to make the mortgagee a party, but the assignee may make him a party.

3. The mere fact that the damages sought to be set up as an abatement of the mortgage debt in a suit to foreclose the mortgage are unliquidated does not prevent equity from granting the abatement; the damages may be ascertained by a jury in a law court or by the court of chancery.

4. Where a vendor of lowland of small value covenanted to fill in the same, and the purchaser gave a mortgage for the price, based on the valuation of the land filled in, one succeeding to the rights of the purchaser under the conveyance from the vendor and his covenant could, in a suit to foreclose the mortgage by an assignee having no interest in the litigation, reduce the mortgage debt to the extent of the damages sustained by the vendor's breach of covenant.

5. A vendor of lowland of small value covenanted to fill in the same. The purchaser gave a mortgage for the price, based on the valuation of the land filled in. A third person acquired the purchaser's rights. After the time for performance, the vendor and the third person entered into an agreement, whereby the vendor agreed to perform the covenant. Prior to the agreement the vendor had assigned the mortgage to an assignee, who was a mere volunteer, and who had no actual interest in the matter. —*Held*, that in a suit by the assignee to foreclose the mortgage, the third person could reduce the mortgage debt to the extent of the damages sustained by the vendor's breach of the original covenant.

On demurrers to cross-bills.

*Mr. Francis V. Dobbins,* for the complainant, the demurrant.

*Messrs. Tennant & Haight,* for the defendants, filing answers by way of cross-bills.

STEVENSON, V. C.

1. In view of the specification of grounds of demurrer and the argument of counsel in this case, it is unnecessary to discuss the technical question whether the defence set up in the answers by way of cross-bill could or should have been presented to the court by the answers. The cross-bills pray not only for an abatement of the mortgage debt, but, in case of such abatement, the mortgage debt shall be found to have been discharged, as the defendants insist is the case, that the mortgage be surrendered up for cancellation. This court will consider that for all present purposes the equitable claims which the defendants set forth against the mortgage indebtedness are properly presented by answers by way of cross-bill, even though the defendants might have gained the benefit of any abatement of the mortgage debt by an answer. See *O'Brien* v. *Hulfish* (*Court of Errors and Appeals, 1871*), *22 N. J. Eq.* (*7 C. E. Gr.*) *471, 475; Mc-Michael* v. *Webster* (*Court of Errors and Appeals, 1898*), *57 N.*

*J. Eq. (12 Dick.) 295; Dayton* v. *Melick (Chancellor Runyon, 1880), 32 N. J. Eq. (5 Stew.) 570; S. C. (Court of Errors and Appeals, 1881), 34 N. J. Eq. (7 Stew.) 245.*

2. The first objection to the demurrer is that the Carteret Realty Company, the original mortgagee, ought to have been brought in as a party in accordance with the practice prescribed or recommended in *Green* v. *Stone, 54 N. J. Eq. (9 Dick.) 387, 401.* See *Haberman* v. *Kaufer, 60 N. J. Eq. (15 Dick.) 271, 277.* It is unnecessary, I think, in this case to discuss the extent to which new parties may be brought into a cause in this court by making them parties defendant to a cross-bill, or an answer by way of cross-bill, or in what manner, in case the pleading is an answer by way of cross-bill, the new parties may or must be brought into court. The elaborate brief for the demurrant, which seems to present every possible argument against the sufficiency of the answers by way of cross-bill on the merits, does not undertake to state any reason whatever why the Carteret Realty Company should be made a party to this suit. If it be conceded that the Carteret Realty Company is interested in the question of damages from its breach of covenant raised by the answers by way of cross-bill, it may follow that this company is a proper party to the cross-bills. It does not follow that this company is a necessary party to this litigation for the accomplishment of justice between the parties who are already before the court. The result of leaving out the Carteret Realty Company is simply to leave that company unaffected by the decree in this cause. The cross-bills allege that the complainant in fact has no interest in this litigation, but is prosecuting the same for the benefit of the Carteret Realty Company, and in fact is a mere cover or representative of that company. The complainant may amend her bill by making the Carteret Realty Company a party, but I see no basis for any objection on the part of the complainant that the defendants by cross-bills or answers by way of cross-bill do not bring the Carteret Realty Company into this litigation.

3. The only other objection to the sufficiency of these answers by way of cross-bill is the general one of want of equity.

The facts set forth in the answers by way of cross-bill are somewhat complex and voluminous. It will not be necessary to state all these facts in order to set forth distinctly the point on which is placed the decision that the demurrers should be over-ruled.

The Carteret Realty Company conveyed to one Reid, to whose rights the defendants succeeded, a tract of land containing a little over three acres. The price was $5,000 per acre. The land was low and marshy and of small value unless filled in. As a part of the consideration on Reid's part the Carteret Realty Company covenanted that on or before a date specified it would fill in a certain portion of the premises, and within six months after the conveyance it "would fill the whole of said premises to the height of three feet above the surface as it then existed." Mr. Reid paid $5,000 in cash and gave back a purchase-money mortgage to secure the balance of the price of the land, viz., $10,365, payable in about three years thereafter. The mortgage contains a provision to the effect that the same was "given to secure part of the purchase price and *conditions* named in said deed." The Carteret Realty Company failed almost completely to perform its covenant, having partially filled in only a small strip of the land in question. A large part of the consideration of the mortgage has manifestly failed. What the Carteret Realty Company in effect contracted in its deed of conveyance to give the mortgagor was this parcel of land containing about three acres filled in to a certain grade.

After the conveyance and purchase-money mortgages were made the Carteret Realty Company assigned the mortgage to the complainant. This assignment appears to have been made after the Carteret Realty Company had defaulted in its agreement to fill a portion of the land, but before the six months had expired within which the company was obliged by its contract to fill in the remainder. The grantee and mortgagor, Reid, acted merely as agent for one Morrill to whom he conveyed the land and transferred all his rights in the covenant with the knowledge and consent of the Carteret Realty Company. Subsequently Morrill transferred the land and all his rights in the covenant

to the defendant corporation Frank T. Morrill & Company. It appears distinctly that the defendant Frank T. Morrill & Company has succeeded to all the rights of the defendant Reid under the conveyance from the Carteret Realty Company and the covenant of the company therein contained. It also appears that the assignment of the bond and mortgage made by the Carteret Realty Company to the complainants "was made without any valuable consideration and with the intention of defrauding" Reid, Morrill and the Frank T. Morrill & Company, "by having the complainant enforce the payment of said mortgage for the benefit of said Carteret Realty Company, without said company performing its said covenant." The cross-bills allege that the Carteret Realty Company has no assets from which any judgment against it could be satisfied, and that the cost of filling in the land to the height called for by the covenant "will alone exceed the said principal sum of said bond and all interest alleged by the complainant to be due thereon."

It is argued strenuously on behalf of the complainant that the answers by way of cross-bill set up no equity which can be recognized or enforced in favor of the defendants or either of them in this suit. The defendant Reid stands liable upon the bond which accompanied the mortgage. The defendant Frank T. Morrill & Company own the land which the complainant seeks to have sold for the satisfaction of her mortgage. The case will be considered as if the two defendants had united in a single answer and a single answer by way of cross-bill.

It seems to me upon both principle and authority that if the allegations of these answers by way of cross-bill are established by the proofs, the defendants have a clear equity to have the damages from the breach of covenant of the Carteret Realty Company ascertained and applied as an abatement of the mortgage debt. In case the mortgage debt is found to be extinguished, the bond and mortgage should be delivered up for cancellation. This result follows, I think, from the logical application of the principle laid down in the case of *Kuhnen* v. *Parker* (*Vice-Chancellor Stevens, 1897*), *56 N. J. Eq.* (*11 Dick.*) *286.* After discussing numerous cases Vice-Chancellor Stevens concludes (*p. 289*):

"I think that the true principle of decision goes at least to this extent. · If the mortgagee foreclose a purchase-money mortgage against the mortgagor, and the mortgagor shows that the covenant against the encumbrances has been broken in such manner as to give him a claim to substantial damages, he may reduce the mortgagee's demand to the extent of those damages."

The cases cited show beyond question that the mere fact that the damages sought to be set up as an abatement of the mortgage debt are unliquidated, is a circumstance which gives the court no difficulty. The damages may be ascertained or assessed by a jury in a law court, by a master, or under our present system by testimony of witnesses taken in open court.

In *Kuhnen* v. *Parker,* however, the court dealt with unliquidated damages caused by the breach of a covenant at the time the conveyance was made, and purchase-money mortgage given back. The covenant under consideration was a covenant against encumbrances, and, as the court pointed out, was broken as soon as it was made. In respect to this feature the present case manifestly is different. The covenant was contained in the deed of conveyance, but it was not broken as soon as it was made, or when the purchase-money mortgage was given back. The breach followed some weeks later. I am unable, however, to see any reason in the distinction just mentioned for the application to this case of any different principle from that which was applied in the case of *Kuhnen* v. *Parker.* In each case there is complete or at least a partial failure of consideration. In *Kuhnen* v. *Parker,* perhaps, if the situation is to be described with metaphysical accuracy, the defect in the mortgage was not so much a partial failure of consideration as a partial lack of consideration, while in the present case there was subsequent to the execution of the mortgage a complete or partial failure of its consideration. The consideration of the mortgage was the conveyance of the land and the covenant of the grantor to fill the land in. The mortgagor plainly received precisely what he was entitled to. As between the original parties to this transaction it seems to me that we have a perfectly plain case where the damages of the mortgagor from the failure of the mortgagee to perform its covenant constitute a proper abatement of the mort-

gage debt in the foreclosure suit. If a man conveys a parcel of unimproved land and at the same time covenants to erect a valuable building upon it, and takes back a purchase-money mortgage based on the valuation of the land with the building on it, and then completely defaults in his covenant to erect the building, is it possible that under any system of jurisprudence in a civilized state he would be permitted to foreclose his purchase-money mortgage for the entire amount, while the unfortunate mortgagor would be left to an action at law for his damages which he might never be able to collect?

The case of *Courson* v. *Canfield* (*Chancellor Runyon, 1870*), *21 N. J. Eq.* (*6 C. E. Gr.*) *92*, is cited as an authority against the position of the defendants. In that case the complainant sought to foreclose a purchase-money mortgage. When the conveyance and purchase-money mortgage were made as a part of the same transaction the grantor covenanted "that he would immediately procure releases of their title from certain persons named who were reputed to have some claim on the lands." The releases were never procured. Whether they were necessary in order to make the title of the purchaser merchantable did not appear, but the complainant insisted that he had shown "a good title and that the releases would be of no value." No effort was made to have the amount of the mortgage debt abated by an amount of money which would equal the difference between the value of the land as it stood, and the value of the land as it would have been if the releases had been obtained. The contention of the defendant was that the performance of the covenant to procure the releases was a condition precedent to the payment of the mortgage, and the conclusion of the argument was that "the payment of the mortgage should therefore be suspended until the performance" of the covenant. (*Page 99.*) The court rejected this argument, holding that the breach of covenant on the part of the mortgagee did not preclude him from foreclosing his mortgage because the covenants were independent. There is absolutely nothing in the report of the case to indicate that the defendant, either by his pleadings or by his proofs, set up that in case contrary to his insistment the complainant should be allowed to foreclose his mortgage, then an abatement of the

mortgage debt should be allowed on account of the complainant's breach of covenant resulting in a partial failure of the consideration of the mortgage. That aspect of the defendant's case was in no way presented to the mind of the chancellor.

The only possible question in this case, if there be one, would seem to be whether the mortgage could be assigned so as to place the assignee in a better position than the assignor with respect to the claim of abatement.

The complainant took the mortgage charged with notice of the conveyance to the mortgagor and the covenant of the Carteret Realty Company, therein contained to do this work upon the mortgaged premises. Any discussion, however, of a possible superior position of the complainant over her assignor is rendered unnecessary by the distinct allegation that she is a mere volunteer without interest and acting for the benefit of her assignor, the Carteret Realty Company.

It is important at every stage of our inquiry to bear in mind that the cross-bills show that the defendant Frank T. Morrill & Company occupy precisely the same position with respect to this land and the covenant of the Carteret Realty Company which was formerly occupied by the defendant Cyrus D. Reid. Frank T. Morrill & Company did not assume to pay the mortgage debt nor was the amount of the mortgage debt deducted from the price which that company agreed to pay. It may be conceded that Mr. Reid might have sold the land unfilled to a purchaser who took it and paid for it in that condition, and who assumed as a part of the price of the land to pay the mortgage debt. In such a case, no doubt, the owner of the equity would be obliged to submit to a foreclosure for the entire mortgage debt while the original mortgagor and covenantee would have an action against the grantor and mortgagee for the damages resulting from the breach of covenant. In such case the entire loss from the breach of covenant remains with the original mortgagor and falls upon him alone. He has been obliged to sell his land diminished in value and presumably for a smaller price because of the failure of his covenant to impart the additional value to it provided for by the covenant, while his grantee has received precisely what he bargained for. We are not obliged

to consider various questions of importance or difficulty because of the facts distinctly alleged in the cross-bills which show that all of the equities of the defendant Cyrus D. Reid are vested in the defendant Frank T. Morrill & Company, while the defendant Reid, on account of his liability upon the bond which he gave, is interested in the enforcement of those equities on behalf of his co-defendant.

One other objection to the equity of the answers by way of cross-bill may be briefly considered. It appears that many months after the expiration of the period within which the Carteret Realty Company was to perform its covenant by making the filling in question, the defendant Frank T. Morrill & Company, being then the owner of the land, entered into an agreement under seal with the Carteret Realty Company wherein the defendant waived its claim to damages up to October 1st, 1906, "by reason of the failure of the Carteret Realty Company to perform the said covenant upon condition and in consideration that the said Carteret Realty Company would perform the provisions of said last-mentioned agreement" (which the company undertook and agreed to do), on or before October 1st, 1906. This was long after the assignment of the mortgage to the complainant. The Carteret Realty Company wholly failed to perform its covenant within the extended period provided for by the last-mentioned agreement. The complainant insists that this new agreement was a novation of the original contract, and that the result of it was to relieve the purchase-money mortgage, then in the hands of the complainant, from any claim of abatement growing out of either the breach of the original covenant of the Carteret Realty Company in its deed of conveyance, or the breach of the subsequent covenant of the Carteret Realty Company with Frank T. Morrill & Company, by which the time of performance of the covenant was extended. All the important facts, especially relating to the actual notice to the parties of circumstances and conditions affecting their respective equities, probably are not before the court. It seems to be quite sufficient to dispose of every possible claim of the complainant based on the distinction between the covenant of the Carteret Realty Company with Cyrus D. Reid, and the subsequent covenant of

the Carteret Realty Company with Frank T. Morrill & Company to point out again that the answers by way of cross-bill allege in substance that the complainant is a volunteer without actual interest and merely representing the Carteret Realty Company in this suit in order to accomplish a fraud.

The demurrers will be overruled.